**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| JOHN HEILMEIER, individually and on behalf of all others similarly situated, | Case No. |
| **Plaintiff** | |
| v. | **CLASS ACTION COMPLAINT** |
| LAKESIDE TITLE COMPANY, a Maryland Corporation, 9200 Old Annapolis Road Suite 200 Columbia, MD 21045 | **JURY TRIAL DEMANDED** |
| Serve On: Yvonne Y. Deardoff, Resident Agent | |
| **Defendant.** | |

Plaintiff John Heilmeier ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), upon personal knowledge of facts pertaining to himself and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against Defendant Lakeside Title Company ("Lakeside" or "Defendant").

## NATURE OF THE ACTION

1.     Plaintiff brings this class action individually and on behalf of all other individuals who had their sensitive personally identifiable information ("PII"), including but not limited to names, email addresses, phone numbers, addresses, Social Security numbers, and other financial information (collectively, "Personal Information") disclosed to unauthorized third parties during a data breach compromising Lakeside in or around December 2025 (the "Data Breach").

2.     On January 2, 2026, the PLAY ransomware group ("PLAY") gained unauthorized access to Lakeside's computer systems and exfiltrated highly sensitive Personal Information

belonging to consumers, including Plaintiff and Class Members.[1]

3.    To date, Lakeside has not yet publicly confirmed the Data Breach, or the nature of the data (e.g., names, addresses, and Social Security numbers) accessed or acquired by PLAY.

4.    Defendant was well aware of or should have known of its data security shortcomings. It regularly collects and maintains sensitive Personal Information about its current and former customers, employees, and other affiliated individuals, including Social Security numbers ("SSNs") and financial information. Nevertheless, Defendant failed to implement industry standard data privacy measures, exposing tens of thousands of individuals to the risk of being impacted by a breach.

5.    Defendant's failures to ensure that its servers and systems were adequately secure jeopardized the security of Plaintiff's and Class Members' Personal Information, and exposed Plaintiff and Class Members to fraud and identity theft or the serious risk of fraud and identity theft.

6.    As a result of Defendant's conduct and the resulting Data Breach, Plaintiff's and Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, and they now face an imminent and ongoing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

---

[1] *See, e.g.,* Ransomware.live, *Victim: Lakeside Title Company,*
https://www.ransomware.live/id/TGFrZXNpZGUgVGl0bGUgQ29tcGFueUBwbGF5 (last visited Jan. 28, 2026); RedPacket Security, *PLAY Ransomware Victim: Lakeside Title Company,*
https://www.redpacketsecurity.com/play-ransomware-victim-lakeside-title-company/ (last visited Jan. 28, 2026).

## PARTIES

7.     Plaintiff John Heilmeier is an adult citizen of the state of Maryland and resides in St. Mary's County, Maryland. Considering the imminent threat arising from the alleged data breach, Plaintiff's residential address has been kept confidential to protect his identify and personal information. Plaintiff is a customer of Lakeside and obtained real estate settlement, escrow, and title services from Lakeside. Believing Lakeside would implement and maintain reasonable security and practices to protect its customers' Personal Information, Plaintiff provided his Personal Information to Lakeside in connection to obtaining services from it.

8.     Defendant Lakeside Title Company is a corporation organized under the laws of the state of Maryland, with its principal place of business located in 9200 Old Annapolis Road, Suite 200, Columbia, Maryland 21045.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class Members, the action is a class action in which one or more Class Members are citizens of states different from Defendant, and Defendant is not a government entity.

10.     The Court has personal jurisdiction over Defendant because Defendant is incorporated in Maryland, maintains its principal office in Columbia, Maryland, operates in Maryland, conducts other significant business in Maryland, and otherwise has sufficient minimum contacts with and intentionally avails itself of the markets in Maryland.

11.     Venue properly lies in this judicial district because, *inter alia,* Lakeside has a principal place of business here; Defendant transacts substantial business, has agents, and is

otherwise located here; and a substantial part of the conduct giving rise to Plaintiff's claims occurred here.

## FACTUAL ALLEGATIONS

### A.     Defendant Collects and Stores Personal Information

12.     Lakeside describes itself as a long-established provider of real estate settlement, escrow, and title services with its principal operations centered in Maryland.[2] Lakeside operates offices across the Mid-Atlantic region, serving Maryland, Washington, D.C., Virginia, Pennsylvania, West Virginia, and Delaware and providing comprehensive support in connection with real estate closings and related transactions, including title searches, escrow services, and document preparation.[3]

13.     In the ordinary course of its business, Defendant collects and maintains highly sensitive personal and financial information from consumers, including names, addresses, Social Security numbers, dates of birth, financial account and routing information, and other nonpublic personal information necessary to complete title searches, escrow accounts, closings, and related services. This is in addition to the sensitive Personal Information Lakeside collects from its employees as part of its onboarding process, which includes collecting SSNs, addresses, and financial details.

14.     Defendant is and was aware of the sensitive nature of the Personal Information it collects, and it acknowledges the importance of data privacy. In its Privacy Policy available on its website, Defendant acknowledges that it "collect[s] nonpublic personal information about you

---

[2] Lakeside Title Company, *About Us*, https://lakesidetitle.com/about/ (last visited Jan. 22, 2026).
[3] *Id.*

from … information we receive from you, such as your name, address, telephone number, or Social Security number," as well as from third parties involved in the real estate transaction process.[4]

15.    Defendant claims that it "maintain[s] physical, electronic, and procedural safeguards that comply with appropriate federal and state regulations" to protect Personal Information—making clear that it was aware of the need to safeguard the sensitive Personal Information entrusted to it.[5]

### B.    **The Data Breach**

16.    On or around January 2, 2026, the PLAY ransomware group claimed to have breached Lakeside's computer systems, gaining access to Plaintiff's and Class Members' sensitive Personal Information.[6]

17.    PLAY posted on its website, which is only accessible via the "dark web," to announce its theft of "private and personal confidential data, client documents, budget, payroll, IDs, taxes, financial information and etc." From www.lakesidetitle.com:[7]

---

[4] Lakeside Title Company, *Privacy Policy*, https://lakesidetitle.com/privacy-policy/ (last visited Jan. 22, 2026).

[5] Lakeside Title Company, *Privacy Policy*, https://lakesidetitle.com/privacy-policy/ (last visited Jan. 22, 2026).

[6] *See, e.g.,* Ransomware.live, *Victim: Lakeside Title Company*, https://www.ransomware.live/id/TGFrZXNpZGUgVGl0bGUgQ29tcGFueUBwbGF5 (last visited Jan. 28, 2026); RedPacket Security, *PLAY Ransomware Victim: Lakeside Title Company*, https://www.redpacketsecurity.com/play-ransomware-victim-lakeside-title-company/ (last visited Jan. 28, 2026).

[7] PLAY Ransomware Group, Leak Site Posting Regarding Lakeside Title Company (Tor-hidden service URL on file with Plaintiff) (accessed Jan. 2, 2026).



18.     Upon information and belief, Plaintiff's and Class Members' Personal Information has already been published on the dark web.

19.     As of this filing, Defendant has made no public acknowledgement of the Data Breach.

**C.     Impact of the Data Breach**

20.     The actual extent and scope, and the impact, of the Data Breach on Lakeside's former and current customers, employees, and other affiliated persons is plainly large, even though its precise contours remain uncertain. Unfortunately for Plaintiff and Class Members, the damage is already done because their sensitive Personal Information has been disclosed to unauthorized persons during the Data Breach.

21.     Defendant knew or should have known that its affected IT systems and/or servers are unsecure and do not meet industry standards for protecting highly sensitive customer Personal Information. On information and belief, Defendant failed to implement adequate data security systems, privacy policies, and its IT systems and servers, exposing Plaintiff's and Class Members' Personal Information to the risk of theft, identity theft, and fraud.

22.     The harm caused to Plaintiff and Class Members by the Data Breach has already been suffered. Even if companies, like Lakeside, that are impacted by ransomware attacks—and the Data Breach has been reported to be such an attack—pay the ransom, there is no guarantee that the criminals making the ransom demands will suddenly act honorably and destroy the sensitive Personal Information. In fact, there is no motivation for them to do so, given the burgeoning market for sensitive Personal Information on the dark web.

23.     The Data Breach creates a heightened security concern for Plaintiff and Class Members because their SSNs, financial information, and other sensitive information was potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of his SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

24.     Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. Per the United States Attorney General, Social Security numbers "can be an identity thief's most valuable piece of consumer information."[8] TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[9]

---

[8] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006), https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.

[9] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

25.    Defendant had a duty to keep Plaintiff's and Class Members' Personal Information confidential and to protect it from unauthorized disclosures. Plaintiff and Class Members provided their Personal Information to Defendant with the understanding that Defendant would comply with its Privacy Policy and its obligations to keep such information confidential and secure from unauthorized disclosures.

26.    Defendant's data security obligations were particularly important given the substantial increase in data breaches in recent years.

**D.**    **Theft of Personal Information Has Serious Consequences for Victims**

27.    Data breaches are by no means new, and they should not be unexpected. Business Insider has noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers. . . . Many of them were caused by flaws in . . . systems either online or in stores."[10] It is well known amongst companies that store sensitive personally identifying information that sensitive Personal Information—like SSNs, financial information, tax information, etc.—is valuable and frequently targeted by criminals.

28.    These types of attacks should be anticipated by companies that store sensitive and personally identifying information, like Defendant, and these companies must ensure that data privacy and security practices and protocols are adequate to protect against and prevent known and expected attacks.

29.    Theft of Personal Information is serious. The Federal Trade Commission has warned consumers that identity thieves use Personal Information to exhaust financial accounts,

---

[10] Dennis Green et al., *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[11]

    30.    Indeed, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[12]

    31.    According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to, among other things: open a new credit card or obtain a loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; or use the victim's information in the event of arrest or court action.[13]

---

[11] *See What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Nov. 24, 2025).

[12] *See Warning Signs of Identity Theft*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Nov. 24, 2025).

[13] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

32.     Personal Information is a valuable property right.[14] The value of sensitive personal information as a commodity is measurable.[15] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[16]

33.     Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

34.     Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

35.     Consumers place a high value on the privacy of sensitive data. Researchers have shed light on how much consumers value their data privacy—and the amount is considerable.

---

[14] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[15] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (April 28, 2014), http://www.medscape.com/viewarticle/824192.

[16] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD LIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[17]

36.     There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[18]

37.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Personal Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

38.     Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[19]

39.     It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

**E.     Defendant Failed to Act in the Face of a Known Risk of a Data Breach**

40.     Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other similar data breaches, Defendant failed to take reasonable steps to adequately

---

[17] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.

[18] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

[19] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.

protect the sensitive Personal Information in its possession, leaving its employees, customers, users, and other individuals exposed to risk of fraud and identity theft.

41.     Defendant is, and at all relevant times has been, aware that the sensitive Personal Information it handles and stores in connection with providing its services and products is highly sensitive. As a company that collects and utilizes highly sensitive and identifying information in connection with providing products, services and employment, Defendant is aware of the importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

42.     Defendant was aware, or should have been aware, of regulatory and industry guidance regarding data security, and was alerted to the risk associated with failing to ensure that Personal Information in its possession was adequately secured.

43.     Despite the well-known risks of hackers and cybersecurity intrusions, Defendant failed to employ adequate data security measures in a meaningful way in order to prevent breaches, including the Data Breach.

44.     The security flaws inherent to Defendant's IT systems or servers run afoul of industry best practices and standards. Had Defendant adequately protected and secured its servers or systems, and the sensitive Personal Information stored therein, it could have prevented the Data Breach.

45.     Despite the fact that Defendant was on notice of the very real possibility of data theft, including through its own prior data breach, it still failed to make necessary changes, and permitted a massive intrusion to occur that resulted in disclosure of Plaintiff's and other Class Members' Personal Information to criminals.

46.    Defendant permitted Class Members' Personal Information to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.

47.    Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group stated in a related context that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[20]

48.    As a result of the events detailed herein, Plaintiff and Class Members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

49.    Victims of the Data Breach are subject to an imminent and ongoing risk of harm, including identity theft and fraud.

50.    As a result of Defendant's failure to ensure that its impacted systems and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiff's and Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

---

[20] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, REUTERS (May 30, 2017), https://www.reuters.com/article/idUSKBN18M2BY/.

## CLASS ALLEGATIONS

51.    Plaintiff brings this action on behalf of himself and the following Class pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **All residents of the United States whose Personal Information was compromised as a result of the Data Breach.**

52.    Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and Court Staff; and (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant, or its parents, have a controlling interest, and its current or former officers and directors.

53.    **Numerosity**: Although the precise number of Class Members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable, as the proposed Class appears to include large numbers of members who are geographically dispersed.

54.    **Typicality**: Plaintiff's claims are typical of Class Members' claims. Plaintiff and all Class Members were injured through Defendant's uniform misconduct, and Plaintiff's claims are identical to the claims of the Class Members they seek to represent. Accordingly, Plaintiff's claims are typical of Class Members' claims.

55.    **Adequacy**: Plaintiff's interests are aligned with the Class Plaintiff seek to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously. The Class's interests are well-represented by Plaintiff and undersigned counsel.

56.    **Superiority**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class Members' claims. The injury suffered

by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for Class Members individually to effectively redress Defendant's wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

57.     **Commonality and Predominance:** The following questions common to all Class Members predominate over any potential questions affecting only individual Class Members:

- whether Defendant engaged in the wrongful conduct alleged herein;

- whether Defendant's data security practices resulted in the disclosure of Plaintiff's and other Class Members' Personal Information and the Data Breach;

- whether Defendant violated privacy rights and invaded Plaintiff's and Class Members' privacy; and

- whether Plaintiff and Class Members are entitled to damages, equitable relief, or other relief and, if so, in what amount.

58.     Given that Defendant engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

59.     **Injunctive and Declaratory Relief:** Consistent with Fed. R. Civ. P. 23(b)(2),

Defendant, through its conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the class as a whole.

## CAUSES OF ACTION

### COUNT I
### Negligence

60.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

61.    Defendant was entrusted with, stored, and otherwise had access to the Personal Information of Plaintiff and Class Members.

62.    Defendant knew, or should have known, of the risks inherent to storing the Personal Information of Plaintiff and Class Members, and to not ensuring that its servers and systems, and the Personal Information, was secure. These risks were reasonably foreseeable to Defendant, including because Defendant has previously experienced a data breach.

63.    Defendant owed duties of care to Plaintiff and Class Members whose Personal Information had been entrusted to it.

64.    Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate data security. Defendant had a duty to safeguard Plaintiff's and Class Members' Personal Information and to ensure that their adequately protected Personal Information was adequately protected. Defendant breached this duty.

65.    Defendant's duty of care arises from its knowledge that its customers entrust it with highly sensitive Personal Information that Defendant is required to, and represents that it will, handle securely. Indeed, on its website, Defendant commits to data privacy in its Privacy Policy, including safeguarding sensitive Personal Information.

66.    Only Defendant was in a position to ensure that its systems, servers, and services

16

were sufficient to protect against breaches and the harms that Plaintiff and Class Members have now suffered.

67.     A "special relationship" exists between Defendant, on the one hand, and Plaintiff and Class Members, on the other hand. Defendant entered into a "special relationship" with Plaintiff and Class Members by agreeing to accept, store, and have access to sensitive Personal Information provided by Plaintiff and Class Members in connection with their purchase and/or utilization of Defendant's products and/or services.

68.     But for Defendant's wrongful and negligent breach of their duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

69.     Defendant acted with wanton disregard for the security of Plaintiff's and Class Members' Personal Information.

70.     The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known it was failing to meet these duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

71.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have been harmed and face an imminent and ongoing risk of harm.

72.     As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II
## Negligence Per Se

73.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

74.     Pursuant to the Federal Trade Commission Act (15 U.S.C. § 45 (the "Act")),

Defendant had a duty to provide adequate data security practices in connection with safeguarding Plaintiff's and Class Members' Personal Information.

75.     Pursuant to the Act, Defendant had a duty to provide adequate data security practices to safeguard Plaintiff's and Class Members' Personal Information.

76.     Defendant additionally breached its duties to Plaintiff and Class Members under the Gramm-Leach-Bliley Act (15 U.S.C. §§ 6801 *et seq.*) ("GLBA"), the Maryland Consumer Protection Act (Md. Code Ann., Com. Law §§ 13-101 *et seq.*) ("MCPA"), Maryland Personal Information Protection Act (Md. Code Ann., Com. Law §§ 14-3501 *et seq.*) ("MPIPA"), among other statutes, by failing to provide fair, reasonable, or adequate data security in connection with providing real estate settlement, escrow, and title services in order to safeguard Plaintiff's and Class Members' Personal Information.

77.     Defendant's failure to comply with applicable laws and regulations constitutes negligence *per se*.

78.     But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

79.     The injury and harm suffered by Plaintiff and Class Members were the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known that it was failing to meet its duties, and that a breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

80.     As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class Members have been harmed and face an imminent and ongoing risk of harm.

81.     As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT III**
**Breach of Implied Contract**

82.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

83.     Defendant provides real estate settlement, escrow, and title services to Plaintiff and Class members, or Plaintiff and Class Members provided their Personal Information to Defendant as employees, customers, or in some other capacity.

84.     In connection with their business relationship, Plaintiff and Class Members entered into implied contracts with Defendant.

85.     Pursuant to these implied contracts, Plaintiff and Class Members provided Defendant with their Personal Information. In exchange, Defendant agreed, among other things: (1) to take reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' Personal Information; and (2) to protect Plaintiff's and Class Members' Personal Information in compliance with federal and state laws and regulations and industry standards.

86.     The protection of Personal Information was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and Defendant, on the other hand. Had Plaintiff and Class Members known that Defendant would not adequately protect its customers' Personal Information, they would not have done business with Defendant.

87.     Plaintiff and Class Members performed their obligations under the implied contract when they provided Defendant with their Personal Information.

88.     Necessarily implicit in the agreements between Plaintiff/Class Members and Defendant was Defendant's obligation to take reasonable steps to secure and safeguard Plaintiff's and Class Members' Personal Information.

89.     Defendant breached its obligations under its implied contracts with Plaintiff and Class Members by failing to implement and maintain reasonable security measures to protect their Personal Information.

90.     Defendant's breach of its obligations of its implied contracts with Plaintiff and Class Members directly resulted in the Data Breach.

91.     The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of Defendant's material breaches of its agreements.

92.     Plaintiff and other Class Members were damaged by Defendant's breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Personal Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Personal Information has been breached; (v) they were deprived of the value of their Personal Information, for which there is a well-established market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the breach, including the increased risks of identity theft they face and will continue to face.

**COUNT IV**
**Breach of Fiduciary Duty**

93.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

94.     A relationship existed between Plaintiff and Class Members and Defendant in which Plaintiff and Class Members put their trust in Defendant to protect the Personal Information of Plaintiff and Class Members and Defendant accepted that trust.

95.     Defendant breached the fiduciary duties that they owed to Plaintiff and Class Members by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest loyalty, and failing to protect the Personal Information of Plaintiff and Class Members.

96.     Defendant's breach of fiduciary duty was a legal cause of damage to Plaintiff and Class Members.

97.     But for Defendant's breach of fiduciary duty, the damage to Plaintiff and Class Members would not have occurred.

98.     Defendant's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and Class Members.

99.     As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff are entitled to and demand actual, consequential, and nominal damages, and injunctive relief.

**COUNT V**
**Violations of the Maryland Personal Information Protection Act**
**Maryland Code Ann., Com. Law §§ 14-3501 *et seq.***

100.     Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

101.     This Count is brought pursuant to the MPIPA, which applies to Defendant because it is incorporated and headquartered in Maryland and/or engages in substantial business in Maryland, and because Defendant owns or licenses computerized data which includes Personal Information as defined under MPIPA. Md. Code Ann., Com. Law §§ 14-3501(b)(1)-(2).

102.     Plaintiff and Class Members are "individuals" or "consumers" as defined under MPIPA. Md. Code Ann., Com. Law §§ 14-3502(a), 14-3503.

103.     Plaintiff's and Class Members' compromised information includes Personal Information as defined under the MPIPA. Md. Code Ann., Com. Law § 14-3501(d).

104.     Defendant violated MPIPA by:

a.    failing to "protect personal information from unauthorized access, use, modification, or disclosure";

b.    failing to "implement and maintain reasonable security procedures and practices that are appropriate to the nature of the personal information owned, maintained, or licensed"; and

c.    failing to ensure its third-party service providers "implement and maintain reasonable procedures and practices[.]"

105.    Defendant's failures and omissions were material because they were likely to induce consumers into purchasing or otherwise utilizing Defendant's products and/or services under the reasonable, but ultimately mistaken, assumption that Defendant would adequately safeguard their sensitive Personal Information.

106.    Plaintiff and the Class reasonably relied on Defendant's misrepresentations concerning its data privacy and security protocols.

107.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have been harmed and face an imminent and ongoing risk of harm.

108.    On information and belief, Plaintiff's Personal Information is now in the hands of cybercriminals and is in imminent danger of being published.

109.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT VI**
**Violation of the Maryland Consumer Protection Act**
**Maryland Code Ann., Com. Law §§ 13-101 *et seq*. ("MCPA")**

110.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

111.    This Count is brought pursuant the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 *et seq.* ("MCPA"), which applies to Defendant because it is incorporated and headquartered in Maryland and/or engages in substantial business in Maryland.

112.    Plaintiff and Class Members are "consumers" as defined under the MCPA § 13-101(h).

113.    Defendant advertises, offers, or sells "consumer goods" and "consumer services" under the MCPA. Md. Code Ann., Com. Law § 13-101(d).

114.    The MCPA prohibits "any unfair, abusive, or deceptive trade practice[.]" Md. Code Ann., Com. Law § 13-303.

115.    Defendant violations of the MCPA represent direct and proximate causes of the Data Breach. These violations include Defendant's:

  a.    failure to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' Personal Information;

  b.    failure to identify foreseeable security risks relating to customer privacy, to remediate the identified security risks, and to adequately improve security and private measures following previous cybersecurity incidents;

  c.    failure to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq*.;

  d.    omission, suppression, and concealment of the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' private personal information; and

e. omission, suppression, and concealment of the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801 *et seq.*

116.    Defendant's failures and omissions were material because they were likely to induce consumers into purchasing or otherwise utilizing Defendant's products and/or services under the reasonable, but ultimately mistaken, assumption that Defendant would adequately safeguard their sensitive Personal Information.

117.    Plaintiff's and the Class reasonably relied on Defendant's misrepresentations concerning its data privacy and security protocols.

118.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have been harmed and face an imminent and ongoing risk of harm.

119.    On information and belief, Plaintiff's Personal Information is now in the hands of cybercriminals and is in imminent danger of being published.

120.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT VII**
**Invasion of Privacy (Intrusion Upon Seclusion)**

121.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

122.    Plaintiff and Class Members had a reasonable expectation of privacy in the Personal Information that Defendant disclosed without authorization.

123.    By failing to keep Plaintiff's and Class Members' Personal Information safe, knowingly employing inadequate data privacy policies and protocols, and disclosing Personal Information to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiff's and Class Members' privacy by, *inter alia*:

      a.    intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; and

      b.    invading Plaintiff's and Class Members' privacy by improperly using their Personal Information properly obtained for a specific purpose for another purpose, or disclosing it to some third party;

      c.    failing to adequately secure Personal Information from disclosure to unauthorized persons;

      d.    enabling the disclosure of Plaintiff's and Class Members' Personal Information without consent.

124.    Defendant knew, or acted with reckless disregard of the fact, that a reasonable person in Plaintiff's and Class Members' position would consider its actions highly offensive.

125.    Defendant knew or should have known that its IT systems and servers were vulnerable to data breaches prior to the Data Breach.

126.    Defendant invaded Plaintiff's and Class Members' right to privacy and intruded into Plaintiff's and Class Members' private affairs by disclosing their Personal Information to unauthorized persons without their informed, voluntary, affirmative, and clear consent.

127.    As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their Personal Information were unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiff's and Class

Members' protected privacy interests.

128.    In failing to protect Plaintiff's and Class Members' Personal Information, and in disclosing Plaintiff's and Class Members' Personal Information, Defendant acted with malice and oppression and in conscious disregard of Plaintiff's and Class Members' rights to have such information kept confidential and private.

129.    Plaintiff seeks injunctive relief on behalf of the Class, restitution, and all other damages available under this Count.

**COUNT VIII**
**Unjust Enrichment**

130.    Plaintiff realleges and incorporates all previous allegations as though fully set forth herein.

131.    This claim is pleaded in the alternative to the implied contract claim.

132.    Defendant has profited and benefited from the monies or fees paid and the Personal Information provided by Plaintiff and Class Members to receive services from Defendant.

133.    Defendant has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff and Class Members did not receive services of the quality, nature, fitness, or value represented by Defendant and that reasonable consumers expected.

134.    Defendant has been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiff and Class Members.

135.    Equity and justice militate against permitting Defendant to retain these profits and benefits.

136.    Plaintiff and Class Members suffered injury as a direct and proximate result of Defendant's unjust enrichment and seek an order directing Defendant to disgorge these benefits and pay restitution to Plaintiff and Class Members.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Class, by and through undersigned counsel, respectfully request that the Court grant the following relief:

A.    Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as class representatives and undersigned counsel as class counsel;

B.    Award Plaintiff and Class Members actual and statutory damages, punitive damages, and monetary damages to the maximum extent allowable;

C.    Award declaratory and injunctive relief as permitted by law or equity to assure that Class Members have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

D.    Award Plaintiff and Class Members pre-judgment and post-judgment interest to the maximum extent allowable;

E.    Award Plaintiff and Class Members reasonable attorneys' fees, costs, and expenses, as allowable; and

F.    Award Plaintiff and Class Members such other favorable relief as allowable under law or at equity.

## JURY TRIAL DEMANDED

Plaintiff hereby demand a trial by jury on all issues so triable.

Dated:  January 30, 2026                    */s/ Cyril V. Smith*
                                            Cyril V. Smith (Bar ID #07332)
                                            ZUCKERMAN SPAEDER LLP
                                            100 East Pratt Street, Suite 2440
                                            Baltimore, MD  21202

Tel: (410) 332-0444
Fax: (410) 659-0436
csmith@zuckerman.com

Bradley K. King *(PHV forthcoming)\**
AHDOOT & WOLFSON, PC
521 5th Avenue, 17th Floor
New York, NY 10175
Tel: (917) 336-0171
Fax: (917) 336-0177
bking@ahdootwolfson.com

*Attorneys for Plaintiff and the Proposed Class*